1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REPUBLIC BANK, INC., a Utah Corporation, | Case No. 12cv2654-BTM-BLM |
| Plaintiff, | **ORDER** |
| v. | |
| ETHOS ENVIRONMENTAL, INC., a California Corporation, | |
| Defendant. | |
| Mazuma CORP., | |
| Plaintiff and judgment Creditor by Assignment, | |
| v. | |
| REGENECA, INC., formerly known as ETHOS ENVIRONMENTAL, INC., | |
| Defendant. | |

Pending before the Court are Plaintiff Mazuma Capital Corp.'s "Motion to Enforce Judgment and Writs of Possession and for a Finding of Contempt and for [an] Award of Attorney's Fees and Costs" (Doc. 11), and Third Party Claimant/Petitioner Greenbridge Capital Partners IV, LLC's "Petition for Hearing to Determine Third Party Claim and Disposition of Property" (Doc. 12). Mazuma's motion is **DENIED**, without prejudice as to enforcement of the judgment and writs of possession, but with prejudice as to the request for a finding of contempt and an award of attorney's fees and cost.

With regard to Greenbridge's motion, the Court finds that an evidentiary hearing is required, and **ORDERS** that the hearing be held on Monday, April 29, 2013, at 10:00 a.m.

As discussed below, the parties will be expected to present evidence on the following issues: (1) the date when Republic/Mazuma Capital became aware that Greenbridge, not Ethos, was storing the equipment; (2) the fair rental value of the space where the equipment is being stored from that date to the present; and (3) the monetary value of Greenbridge's failure to mitigate its loss, to be offset against the fair rental value.

## I. BACKGROUND

This action was brought pursuant to 28 U.S.C. § 1963, which allows parties to enforce a judgment entered by an out-of-district federal court for the recovery of money or property.

There are several entities involved in this litigation, but only two are presently before the Court:  Plaintiff Mazuma Leasing of Utah, LLC ("**Mazuma LLC**")—a California limited liability company and the current assignee of a judgment of the United States District Court for the District of Utah—and Greenbridge Capital Partners IV, Inc. ("**Greenbridge**"), the owner of a large industrial building located at 6800 Gateway Park, San Diego, CA 92154 (the "property").

This litigation arises out of a lease agreement between Republic Bank, Inc. ("Republic"), Mazuma LLC's predecessor in interest, and Ethos Environmental, Inc. ("Ethos").  In March 2007, Republic leased certain industrial equipment, including large storage tanks (the "equipment"), to Ethos, and the equipment was installed at the property. At the time the equipment was installed, Ethos owned the property.  (Decl. Douglas Petty (Doc. 11-3) ¶ 5; Ex. G.)  However, by the time of the District of Utah judgment in 2011, Greenbridge owned the property and was leasing it to Ethos.

In 2009, Republic sued Ethos in the United States District Court for the District of Utah, claiming that Ethos had defaulted on the lease agreement for the equipment (the "Utah litigation").

In December 2010, during the pendency of the Utah litigation, Ethos breached its lease agreement with Greenbridge and abandoned the property.

On March 23, 2011, Magistrate Judge Brooke C. Wells entered a final judgment in the Utah litigation in favor of Republic (the "judgment"), ordering

> that Republic have and recover the leased equipment . . . ; that Republic is entitled to immediate possession of such equipment, and may sell, re-lease, or otherwise dispose of such equipment as provided in the Lease; and that Ethos immediately surrender such equipment to Republic or its agent.

Republic Bank, Inc. v. Ethos Environmental, Inc., No. 1:09cv24, slip op. at 2 (D. Utah Mar. 23, 2011).  Following entry of the judgment, Republic and Ethos entered a settlement agreement on June 10, 2011, pursuant to which Ethos agreed to "immediately return the equipment to Republic *by providing access to Republic* to pick-up the Equipment and/or for Republic to arrange for shipping of the Equipment at Republic's own expense" (Jensen Decl. (Doc. 11-2) Ex. N at 3 (emphasis added))—notwithstanding the fact that Ethos no longer occupied the property and had breached its lease agreement with Greenbridge six months earlier.

In the months surrounding the June 10, 2011 settlement agreement with Ethos, Republic coordinated with Robert Van Boerum, who represented himself as the Chief Financial Officer for Ethos, to access the equipment for the purposes of inspecting its condition and arranging for its sale.  (Peterson Decl. (Doc. 32-3) ¶¶ 7-15.)  Republic communicated with Mr. Van Boerum to arrange for access to the property between April 2011 and August 2011, and for inspections of the equipment occurring on April 28, 2011, and July 7, 2011.  (Id.)

In November 2011, Republic contacted Greenbridge in an effort to arrange for the removal of the equipment.  However, Greenbridge refused to allow Republic to remove the equipment unless Republic paid "storage and rental fees."

On December 7, 2011, Republic opened the present case as Case No. 11mc01556 by filing in this Court the "Certification of judgment for Registration in Another District" (Doc. 1).  Shortly thereafter, Republic caused to be issued a writ of possession, which was served on Greenbridge on or about January 31, 2012.  Greenbridge continued to refuse to release the equipment.

On March 6, 2012, Greenbridge served Republic with a Notice of Right to Reclaim Abandoned Property, stating that if Republic did not pay a "reasonable cost of storage" and take possession of the equipment by March 24, 2012, Greenbridge would dispose of the equipment.

On April 11, 2012, Republic assigned all of its right, title and interest in the judgment to Mazuma Capital Corporation ("Mazuma Capital"). Mazuma Capital obtained and served a new writ of possession in its name, again to no effect. On July 2, 2012, Mazuma Capital filed the present motion to enforce judgment and writs of possession. This motion seeks an order from this Court requiring Greenbridge to release the equipment and to pay Mazuma Capital's attorneys' fees and costs. On July 25, 2012, while its motion was pending, Mazuma Capital assigned "all of its right, title and interest" in the amended judgment to Mazuma LLC, the current assignee.[1] (Doc. 17, Acknowledgment of Assignment of judgment.)

According to Mazuma, Greenbridge continues to demand as a condition of releasing the equipment the payment of storage and rental fees of approximately $60,000—an amount allegedly exceeding the value of the equipment itself.

On July 2, 2012, Greenbridge filed its present petition. The petition claims that Ethos abandoned the property on or about December 2010, that Greenbridge is entitled to recover $126,000 for the reasonable cost of storing the abandoned equipment, and that Greenbridge's claim to the equipment is superior to Mazuma's.

On August 27, 2012, the Court held a hearing on Mazuma's motion and Greenbridge's petition, at which the parties agreed that the central issue in this case is whether Greenbridge has a statutory entitlement to storage fees dating back to March 2011, notwithstanding the fact that it did not put Mazuma on notice of its claim to fees until

---

[1] This assignment appears to have taken place solely to assure that the assignee of the judgment would have standing to pursue this action. However, the Court finds that both Mazuma Capital Corp. and Mazuma LLC have standing to pursue this action. See infra. Since the assignment took place while the motion was pending, and the analysis is not otherwise affected, the Court uses "Mazuma" interchangeably except where otherwise noted.

12cv2654-BTM-BLM

November 2011, and did not serve upon Mazuma a Notice of Right to Reclaim Abandoned property until March 6, 2012.  On September 7, 2012, the parties filed supplemental briefs, as ordered by the Court, addressing two issues: 1) whether a landlord must serve notice on an owner of abandoned personal property left on the premises before beginning to assess storage fees and costs, and 2) whether Mazuma's UCC Financing Statement or Greenbridge's claim for storage costs pursuant to California Civil Code § 1990 has priority.

## II.  DISCUSSION

Under 28 U.S.C. § 1963, a party may register judgments for recovery of money or property that have been entered in another district.  28 U.S.C. § 1963.  "A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner."  Id.  Courts look to the law of the registering forum for rules regarding the execution of judgments.  In re Estate of Ferdinand E. Marcos Human Rights Litigation, 536 F.3d 980, 989 (9th Cir. 2008).

One preliminary issue that Greenbridge has raised is whether this action may be brought in California.  It is uncontested that Mazuma LLC, the current assignee of the judgment, is a limited liability company registered to do business in California.  However, Mazuma Capital commenced this action to enforce the judgment as the then-assignee, and neither Mazuma Capital nor the original plaintiff, Republic, is registered to do business in California.  Greenbridge claims that "[a] corporation which is not qualified to do business cannot pursue legal action in California because it lacks standing" under California Corporations Code § 2105 (Greenbridge Pet. (Doc. 12) at 7-8).  Section 2105 states: "A foreign corporation shall not transact intrastate business without having first obtained from the Secretary of State a certificate of qualification."  Cal. Corps. Code § 2105(a).

A party asserting that a foreign corporation lacks standing bears the burden of proof.  See United Medical Mgmt. v. Gatto, 49 Cal. App. 4th 1732, 1740 (1996).  Here, Greenbridge has failed to meet its burden.  Under California Corporations Code § 191, "[m]aintaining or

defending any action or suit" is not considered to be intrastate business, Cal. Corps. Code § 191(c)(1), and Greenbridge has not otherwise shown any intrastate business by Mazuma or Republic. Mazuma LLC, as noted above, is registered to do intrastate business in California. Therefore, Republic, Mazuma, and Mazuma LLC all had standing during their respective participation in this action.

a.    Greenbridge's claim for reasonable storage costs

Greenbridge asserts its claim to storage costs under the provisions of the California Civil Code governing the disposition of personal property left by a tenant upon the termination of a tenancy or the vacation of the premises. See Doc. 12 at 4-5, Doc. 22 at 3. Greenbridge cites no other legal authority in support of its claim for storage costs. California's laws governing the disposition of property remaining on a premises upon the termination of a tenancy are set forth at California Civil Code §§ 1980, *et seq*. (residential tenancy) and 1993, *et seq*. (commercial tenancy).

Section 1993.03(a) requires that "[i]f property remains on the premises after a tenancy has terminated and the premises have been vacated by the tenant, the landlord ***shall*** give written notice to the tenant and ***to any other person the landlord reasonably believes to be the owner of the property***." Cal. Civ. Code § 1993.03(a) (emphasis added).

Section 1987(a) (incorporated by reference into the provisions covering commercial tenancies by § 1993.01) provides that "[t]he personal property described in the notice shall be released by the landlord to the former tenant or, at the landlord's option, to any person reasonably believed by the landlord to be its owner ***if such tenant or other person pays the reasonable cost of storage*** and takes possession of the property not later than the date specified in the notice for taking possession." Cal. Civ. Code § 1987(a) (emphasis added).

Section 1990(c) (also incorporated by reference into the provisions covering commercial tenancies by § 1993.01) states that "the cost of storage shall be the fair rental

value of the space reasonably required for such storage for the term of storage."  Cal. Civ. Code § 1990(c).

The parties dispute whether these provisions require the landlord to provide notice pursuant to § 1993.03 before the landlord may begin to assess reasonable storage fees. Greenbridge argues that the notice provision operates separately and independently from the storage costs provision, and that there is no requirement in the statutes that the landlord must provide notice in order to recover reasonable storage costs.  Mazuma argues that the landlord may not begin to assess storage fees under § 1987(a) until after providing notice as required by § 1993.03.  Neither party is right nor fully wrong.

Nothing in the relevant statutory provisions addresses when the landlord may begin assessing storage costs.  Therefore, the Court looks to the case law and general principles of equity.  <u>Gray v. Whitmore</u>, 17 Cal. App. 3d 1 (1st Dist. 1971), is one of the few cases discussing the landlord's statutory right to reasonable costs of storage in a similar context. That case evaluated whether the reasonable storage costs provision in California Civil Code § 1174 (a statute similar to §§ 1983 *et seq*. and 1993 *et seq*. that operates when a tenant leaves personal property on a premises after vacating the premises under a writ of possession) denied substantive due process.  In upholding the constitutionality of the reasonable storage costs provision, the <u>Gray</u> court reasoned:

> In this state it is an established principle that "Where one performs for another, **with the other's knowledge**, a useful service of a character usually charged for, **and the latter expresses no dissent, or avails himself of the service**, a promise to pay the reasonable value of the services is implied." . . . This principle has been applied when an owner of property, entitled to possession of the premises, **has advised the tenant or occupant that if he did not remove his property it would be placed in storage at his expense**. . . . In such a case where the tenant or occupant **chooses** to allow it to be stored in a warehouse there is an implied agreement on his part to pay the reasonable storage charges.

17 Cal. App. at 24-25 (citations omitted) (emphasis added).  In other words, the landlord's right to reasonable storage fees arises out of an implied contract with the owner of the personal property—an implied contract that can be formed *only if the owner of the personal property is aware that the landlord is performing the storage service*.  The relevant question,

therefore, is when Republic became aware that Greenbridge, not Ethos, was storing the equipment.

Greenbridge argues that Republic was aware at all relevant times of the location of the equipment, and therefore knew that Greenbridge was performing a storage service. Greenbridge, however, ignores the evidence introduced in this matter showing that Republic reasonably believed that *Ethos*, not Greenbridge, was in possession of the property during the relevant time period—and reasonably held that belief at least until Republic learned of Greenbridge's demand for storage costs in November 2011.   This evidence includes the judgment in the Utah litigation and the June 10, 2011 settlement agreement, both of which require *Ethos*, not Greenbridge, to provide access to the equipment,[2] as well as the uncontradicted statements in the Declaration of Michael Peterson that the CFO of *Ethos* provided access to the property in 2011, once in April and once in July.[3]  Greenbridge has provided no reason to believe that Republic knew or should have known, at any time prior to November 2011, that Ethos had abandoned its lease with Greenbridge and that Greenbridge was therefore storing the equipment at its own expense.

Unfortunately, however, it is not clear from the record before the Court when exactly Republic did become aware that Greenbridge was performing this storage service.  For instance, an August 23, 2011 email exchange between a Republic corporate officer and a sales agent for the equipment refers to a statement by Mr. Van Boerum that "he would like to check with the landlord[,] [but believes] that no tenant is slated to move into the facility in the near future," Ex. D (Doc. 32-4) at 45.  This indicates that Republic was aware by that time that Ethos' tenancy had been terminated.  However, the fact that Republic was still relying on Ethos for information regarding the property leaves it ambiguous as to whether

---

[2]See Republic Bank, Inc. v. Ethos Environmental, Inc., No. 1:09cv24, slip op. at 2 (D. Utah Mar. 23, 2011) (ordering that "Ethos immediately surrender such equipment to Republic or its agent"); Jensen Decl. (Doc. 11-2) Ex. N (June 10, 2011 Settlement Agreement) at 3 (requiring Ethos to "immediately return the equipment to Republic by providing access to Republic to pick-up the equipment and/or for Republic to arrange for shipping of the equipment at Republic's own expense").

[3]See Peterson Decl. (Doc. 32-3) ¶¶ 7-15.

1   Republic knew that Ethos had abandoned the lease outright.  The Court therefore finds that
2   an evidentiary hearing is needed to determine: first, the date when Republic became aware
3   that Ethos had abandoned the lease, leaving Greenbridge to store the equipment, and
4   second, what the "fair rental value" for the space would have been from that date to the
5   present.

6        However, Greenbridge was also required to mitigate its damages.  See, e.g., Placer
7   County Water Agency v. Hofman, 165 Cal. App. 3d 890, 897 (Ct. App. 1985) (noting the
8   general rule that "one who has been injured in either his person or property by the wrongful
9   act or default of another is under an obligatory duty to make a reasonable effort to minimize
10  the damages," and cannot recover any damages that result from his failure to do so).
11  Greenbridge has not offered any evidence that it attempted to mitigate its damages in any
12  way during the eleven-month period between Ethos' alleged abandonment of the premises
13  and Republic's first attempt to reclaim the equipment.  Indeed, had Republic not contacted
14  Greenbridge regarding access to and removal of the equipment, one wonders how much
15  longer Greenbridge would have waited before informing Republic that it expected Republic
16  to pay storage costs.  Then, after announcing in November 2011 that it would seek storage
17  costs for the equipment, Greenbridge refused to release the equipment until
18  Republic/Mazuma paid storage costs retroactive to May 2011,[4] thereby further exacerbating
19  them.  Therefore, the third and final issue to be addressed at the evidentiary hearing is the
20  monetary value of Greenbridge's failure to mitigate, which will offset any reasonable storage
21  charges.
22  //
23  //
24  //
25  //
26  //
27  _____

28       [4] See Strohman Decl. (Doc. 11-4) ¶12.  From the record before the Court, it is unclear
    why Greenbridge chose May 2011 as its starting date for storage costs when it alleges that
    Ethos abandoned the lease in December 2010.

9

b.    Whether the UCC Financing Statement or Greenbridge's claim for storage costs takes priority

The second issue the Court asked the parties to address in their supplemental briefs was whether the UCC Financing Statement or Greenbridge's claim for storage costs takes priority.  There are few cases discussing § 1993.03, and none of them address what happens when there are competing claims.  However, the statutory structure indicates that payment of the storage costs is a prerequisite for retrieving the property.  Specifically, § 1987(a) states that "[t]he personal property described in the notice shall be released by the landlord... *if* such tenant or other person pays the reasonable cost of storage..."  Cal. Civ. Code § 1987(a) (emphasis added).  This reading of the statute is supported by Gray, in which the court found that the statutory provision for reasonable storage costs at issue in that case created a "special lien" on the property being stored.  17 Cal.App.3d at 16. Therefore, the Court finds that Greenbridge's claim for storage costs has priority over the UCC Financing Statement.

Mazuma argues that Schedule A to the UCC Financing Statement, entitled "Landlord Waiver," applies to Greenbridge as Ethos' successor-in-interest to the property.  The Financing Statement was recorded in the San Diego County real estate records, so Greenbridge was on notice that this Landlord's Waiver existed.  See Ex. H (Doc. 11-7) at 2. However, the Landlord Waiver was signed by the beneficiary of the deed of trust, not by Ethos, and Greenbridge is *Ethos*' successor-in-interest to the property.  Since Greenbridge is neither a successor nor assignee of the beneficiary of the trust deed, the Court holds that the Landlord Waiver does not apply to Greenbridge.

Since the Court finds that Greenbridge's lien has priority and that the Landlord Waiver does not apply, it **DENIES** Mazuma's motion for enforcement of the judgment and writs of possession, with leave to renew in the event that Greenbridge later refuses to release the equipment after Mazuma pays the amount of storage costs the Court finds Greenbridge is entitled to.

c.      Mazuma's claim for attorneys' fees and costs

Mazuma also requests an order requiring Greenbridge to pay attorneys' fees and costs incurred by Republic and the Mazuma companies in their efforts to enforce the judgment against Greenbridge.  Mazuma seeks costs and fees under California state law, as well as under the Court's inherent power.

First, Mazuma cites California Code of Civil Procedure § 701.020(c), which provides that if a "third person's liability [to a judgment creditor] is established, the court that determines the liability may, in its discretion, require the third person to pay the costs and reasonable attorney's fees incurred by the judgment creditor in establishing the liability." Cal. Code Civ. P. § 701.020(c).  However, this provision applies only where a judgment creditor seeks to enforce a money judgment against a third party via a writ of execution; *not* where, as here, a judgment creditor seeks to enforce a *nonmoney* judgment against a third party via a *writ of possession*.  See Cal. Code Civ. P. § 701.020(a).

Second, Mazuma argues that Greenbridge committed acts of contempt as defined by the law of California, as California includes within its definition of contempt any "[d]isobedience of any lawful judgment, order, or process of the court" (Cal. Code Civ. P. § 1209(5)), as well as "[a]ny other unlawful interference with the process or proceedings of a court" (id. § 1209(9)).  A party found by the Court to be "guilty" of such contempt "may be ordered to pay the party initiating the contempt proceeding the reasonable attorneys' fees and costs incurred by [the initiating] party in connection with the contempt proceeding." Id. § 1918(a).  Similarly, Mazuma appeals to the Court's inherent power to assess attorneys' fees and costs as a sanction for willful disobedience of a court order and other bad faith conduct.  Greenbridge, however, has not yet disobeyed any judgment or order entered against it.  And although Greenbridge failed to provide timely notice of its intent to seek storage costs, California law is obviously unclear as to whether a landlord can recover storage costs retroactively after serving notice, and the Court does not find that Greenbridge's refusal to release the equipment before receiving payment for storage costs

11

constitutes "unlawful interference" with the District of Utah's judgment, or bad faith conduct warranting sanctions under the Court's inherent power.  Accordingly, the Court **DENIES** Mazuma's request for attorneys' fees and costs.

### III.  CONCLUSION

For the reasons set forth above, the Court hereby **DENIES** Mazuma's motion without prejudice as to enforcement of the judgment and writs of possession.  The Court further **ORDERS** an evidentiary hearing to address the following matters: (1) the date when Republic became aware that Greenbridge, not Ethos, was storing the equipment; (2) what the fair rental value would have been from that date to the present; and (3) the value of Greenbridge's failure to mitigate.  The evidentiary hearing shall take place on Monday, April 29, 2013 at 10:00 a.m.

**IT IS SO ORDERED.**

DATED:  January 28, 2013

BARRY TED MOSKOWITZ, Chief Judge
United States District Court